**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Tam Vieth, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and I have been since 2014.  In my capacity as a Special Agent, I am familiar with the federal laws relating to Arson and Explosives violations, have been trained in the investigation of violations of said laws, and have participated in such investigations.

2.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officers, and witnesses.  When a statement of another individual is included herein, it is presented in sum and substance, unless it is shown to be quoted directly.  This affidavit is intended to show only that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

3.    I submit this affidavit in support of an application for a Criminal Complaint and accompanying Arrest Warrant charging Jeffrey M. Nolan with a violation of 18 U.S.C. § 844(i), which prohibits the malicious damage or destruction of, and attempts to damage or destroy, any building or other real or personal property used in interstate commerce or any activity affecting interstate commerce by means of fire or an explosive.  Based on the facts below, probable cause exists to believe that, on multiple dates, Jeffrey M. Nolan damaged, destroyed, or attempted to damage multiple buildings or implements by means of fire, that he acted intentionally or with deliberate disregard of the likelihood that damage or injuries would result, and that the properties were used in business activities that affected interstate commerce.  In the instance charged in the proposed complaint, he did so at a Stowe Cable Systems building on or about January 7, 2021.

1

## Facts Establishing Probable Cause

4.     Detective Sergeant Todd Ambroz is assigned to the Fire & Explosion Investigation Unit of the Vermont State Police, and he is also designated as a Deputy State Fire Marshal for the Department of Public Safety (DPS).  He was the primary investigator in the events described below, and I have worked with him extensively during this investigation.  I have met and spoken with Det. Sgt. Ambroz on multiple occasions, and we discussed the following information at length.  Det. Sgt. Ambroz and I have also worked with Detective Sergeant Frederick Whitcomb of the Stowe Police Department (SPD) during this investigation.  Det. Sgt. Whitcomb is the primary investigator for SPD in this investigation.

5.     Over the course of more than five years, a series of fires occurring in the Town of Stowe—a location within the District of Vermont—resulted in damages to structures that exceeded four million dollars of damage, displaced several people from their jobs, endangered lives, and created an atmosphere of anxiety for the residents of Stowe.  Initially, some of the fires in the series were thought to be accidental and not suspicious.  Over the course of the investigation, however, it appeared that the fires were being deliberately set.  During this arson investigation, as described below, investigators identified an individual (known to law enforcement, but referred to herein as Subject 1) as a subject of interest.  Subject 1 was the target of multiple federal search warrants and was the initial suspect for the series of fires.  While investigators still believe that Subject 1 was involved with and responsible for some of the fires, they have since identified Jeffrey M. Nolan as the probable source of later fires in the series.

### Fire 1 – October 19, 2015 – Grey Fox Inn

6.     At 5:51 AM on October 19, 2015, a 911 call was received from Subject 1, in which he stated he could smell smoke coming from the Grey Fox Inn at 990 Mountain Road in Stowe.

The Grey Fox Inn is a hotel with a restaurant open to the public, including out-of-state tourists, and the business therefore operates in a manner affecting interstate commerce.   During the 911 call, Subject 1 stated he could not tell if the smoke was coming from the chimney.  The Stowe Fire Department responded to the scene, along with the Stowe Police Department.  They discovered a fire in a mulch pile on the exterior of the building in an area that does not have any usual foot traffic.  The manager of the Grey Fox Inn stated he had walked the perimeter of the building at 11:00 PM and did not notice anything wrong.  The October 19, 2015, fire was the first exterior, low-level fire of an unoccupied building in a series of fires that followed.

**Fire 2 – June 22, 2016 – Green Mountain Inn**

7.     On June 22, 2016, Det. Sgt. Ambroz responded to a fire at the Green Mountain Inn at 18 Main Street in Stowe that was discovered at 2:15 AM.  The Green Mountain Inn is a hotel with a restaurant open to the public, including out-of-state tourists, and the business therefore operates in a manner affecting interstate commerce.  The fire destroyed a 20-foot by 40-foot structure that was being used as storage for mountain bikes and skis on one side and for recycling and trash by the occupants of the Green Mountain Inn on the other side.  Det. Sgt. Ambroz indicated the cause of this fire was undetermined due to the almost complete consumption of the building.  He noted, however, there were no competent ignition sources located during the fire scene examination other than electrical wiring for the lights and outlets.

**Fire 3 – July 12, 2016 – Stowe Elementary School**

8.     On July 12, 2016, at 11:47 PM, a fire occurred in a shed at the Stowe Elementary School at 254 Park Street in Stowe.  The shed was approximately 10 feet by 10 feet, and it did not have any electrical power to it.  The fire was investigated on July 13, 2016, by members of the DPS Fire & Explosion Investigation Unit.  While they were examining the fire scene, SPD

Det. Sgt. Fred Whitcomb went inside the elementary school to speak to the school staff about the shed. While he was inside the school, he observed a man eating his lunch while staring intently out of the window at the fire investigators. Det. Sgt. Whitcomb began speaking to the man, who identified himself by name (referred to herein as Subject 1). Subject 1 stated he had worked at the school until 9:30 PM the previous night (the night of the fire). Subject 1 said he left between 9:30 and 9:45 PM, approximately two hours before the fire was noticed. Subject 1 also said he was aware that on July 11, 2016, someone had cut the tops off all the flowers/plants that were growing outside of the shed. Subject 1 also offered his opinion that the fire in the shed must have started by someone lighting the hay bales. Subject 1 also commented on the "arson" at the Green Mountain Inn a few weeks before this fire. Det. Sgt. Whitcomb found Subject 1's conversation to be suspicious and thought that Subject 1 was oddly engaging with his knowledge about what happened. Det. Sgt Whitcomb asked Subject 1 to keep his eyes peeled for anything suspicious while he was out delivering the papers during the early morning hours.

**Fire 4 – July 14, 2016 – Main Street**

9.    Early the next day, July 14, 2016, Subject 1 called the Stowe Police Department on their direct telephone line at 5:08 AM. He stated he was on Main Street and could smell smoke. Subject 1 asked the dispatcher to send a patrol car. An SPD Officer arrived on scene a few minutes later to find Subject 1 putting out the fire with a garden hose he had found on a nearby business.

10.    I have reviewed a video recording from a security camera on the Country Store at 109 Main Street from that date and time, and the events did not align with what Subject 1 described during the 911 call that he could be seen making in the video. The surveillance video showed Subject 1 parking his car on Main Street near the Country Store. After exiting his

4

vehicle, Subject 1 walked north down the alley between the Country Store and another building before turning to the right, where he then went off camera. Subject 1 returned approximately a minute later and then placed the phone call to SPD. During the call, he stated that he smelled smoke and was aware there was an arsonist in town. The video demonstrates that Subject 1 actually went to the location where the fire was later found on the back of the building to the right, on its exterior, at a very low level. He then walked back south through the alley and made the call, stating he "smelled smoke" rather than that he had already seen an actual fire and where it was located. As the video continued, Subject 1 did not appear to rush or show a sense of urgency to secure the hose on the east wall of the Country Store to put out the fire. He walked slowly to the hose and then unwound and slowly pulled it to where the fire was later located by the police officer. Subject 1 walked back to the spigot and turned the water on. He then actually waited at the spigot until he saw the police responding. He then returned to the scene of the fire, where he was then "discovered" hosing it down.

11.   Subject 1 was asked to come to the Stowe Police Department to provide a statement about the incident, and he agreed. Subject 1 described himself as a hero when questioned. He said that he did not remember things the way the video indicated because it was a traumatic event. During the interview, Subject 1 said, "I cannot confess to being an arsonist." He also stated that he could not afford to hire a lawyer or to be a convicted felon.

12.   During the interview, Subject 1 consented to have his phone examined by Det. Sgt. Whitcomb. The phone contained a picture of a burned house in Ossining, New York. Det. Sgt. Ambroz later learned that the burned house in the photo was of a vacant home near the house where Subject 1 lived prior to moving to Vermont.

**Fire 5 – August 11, 2016 – Parks and Recreation Facility**

13.   On August 11, 2016, at 3:16 AM, a fire occurred at the Stowe Parks and Recreation

Maintenance facility, which is located only 600 feet from the Stowe Elementary School.  A

baseball diamond between the Stowe Elementary School and the Parks and Recreation building

revealed fresh tracks in the dew on the grass leading to and from the fire scene.  A tracking

canine was brought to the scene, and the track led to the road on the east side of the elementary

school where it appeared a car had been parked.   During the fire scene examination by the DPS

Fire & Explosion Investigation Unit, Subject 1 called Det. Sgt. Whitcomb on his cell phone.

Subject 1 said he had heard that Det. Sgt. Whitcomb had a busy night.  Subject 1 asked to meet

with Det. Sgt. Whitcomb.  Subject 1 agreed to meet at the Stowe Police Department after the fire

scene examination.

14.   Det. Sgt. Ambroz and I arranged to be at the Stowe Police Department when Subject

1 arrived so we could speak to him about the Parks and Recreation building fire.  Initially

Subject 1 told them he only wanted to talk to Det. Sgt. Whitcomb about something on his cell

phone, but he then continued to talk to Det. Sgt. Ambroz and me about the fire.  Subject 1 stated

that he was home at the time the fire came in.  Det. Sgt. Ambroz told him that an SPD Officer

had checked to see if he was at his house when the fire was discovered.  Subject 1 said that his

car was in the driveway and that he was home.  Det. Sgt. Ambroz then told Subject 1 that they

had checked to see if the engine on his car was warm, which it was, and that they had noted that

the dew on his windshield had been wiped clean by his wipers.  Subject 1 slumped forward, but

sat up straight after a few seconds and said, "I sure hope it's not my son."  During this

discussion, Subject 1 initially agreed to take a polygraph regarding the fires; when he was later

contacted by Det. Sgt. Ambroz, however, Subject 1 stated he had spoken to a lawyer and declined to submit to a polygraph.

15.   Investigators contacted the Ossining Police Department in New York to inform them about the photo of the burned house on Subject 1's cell phone.  On August 12, 2016, they interviewed Subject 1 about his possible involvement in the fire.  The fire in Ossining is believed to have been an arson of a vacant house, and the house happened to be next door to Subject 1's residence when he lived in that area.

16.   Following the fires between October 2015 and August 2016, no suspicious fires were reported in the Stowe area for approximately two years.  Based on subsequent events and investigation described below, I believe it is possible that Subject 1 was involved in Fires 1-5 but discontinued his involvement after law enforcement contacts with him in August 2016.

**Fire 6 – August 5, 2018 – Green Mountain Inn**

17.   On August 5, 2018, at 12:40 AM, a fire was discovered at the back of the spa at the Green Mountain Inn at 18 Main Street.  Investigators determined the fire started on the exterior of the building at a very low level.  Although state investigators did not determine the cause of the fire, in part due to electrical wiring in the general area of origin, a private fire investigator hired by an insurance company examined the fire scene and determined it was intentionally set. At the time of the fire, several people were occupying the hotel.

**Fire 7 – October 2018 – Water Department Shed**

18.   In late October 2018, a Stowe town employee discovered that a fire had been set on the back side of a 10-foot by 10-foot shed used by the water department on north side of Thomas Lane between Route 100 and Depot Street in Stowe.  The fire had been set at a very low level on the exterior of the building, but the fire never spread to the point that it destroyed the building.

Investigators located no competent ignition sources in that area of the building, leading them to conclude that the fire had been intentionally set.

**Fires 8 and 9 – March 30, 2019 – Stowe Library and 638 South Main Street**

19.   On March 31, 2019, at 12:36 AM, Det. Sgt. Ambroz received a phone call from Vermont State Police dispatch regarding two fires in the Town of Stowe.  He was the on-call fire investigator for the DPS Fire & Explosion Investigation Unit for the area at that time.  According to dispatch, two fires were discovered within just a few minutes of each other in Stowe late the previous evening.  Det. Sgt. Ambroz called Captain Kyle Walker of the Stowe Fire Department, and Captain Walker advised there was a fire at the Stowe Library at 90 Pond Street that was undoubtedly, in his opinion, an arson which started on the exterior of the library.  He was unable to speak with Det. Sgt. Ambroz at length because he was also fighting a fire at 638 South Main Street (Route 100) in Stowe that was large and also appeared to have started on the exterior of the building.  Det. Sgt. Ambroz responded to the fire scenes to investigate the circumstances.  He first went to 638 South Main Street, a commercial office building containing five active businesses, but when he arrived at approximately 1:30 AM he could not begin an investigation because the fire was still not under control.  He then went to meet Det. Sgt. Whitcomb at the library at 90 Pond Street.

20.   The fire alarm at the Stowe Library had activated at 11:14 PM on March 30, 2019. Captain Walker responded to the Library scene and met the key holder to the building.  As he walked to the front of the building, Captain Walker observed an orange glow coming from inside the building.  Once inside the library, Captain Walker discovered a fire burning on one of the windowsills at the back of the library.  Captain Walker used a fire extinguisher to put out the fire from the inside of the building.  As he was notifying dispatch about the fire, other fire fighters

8

were responding to the fire department due to the radio alarm tone which called for them to respond.   Two fire fighters were responding and driving by 638 South Main Street, the scene of the second fire, when they observed flames and smoke coming from behind the building.   That fire was called in at approximately 11:22 on March 30, 2019.

21.   Det. Sgt. Ambroz was able to determine that the fire at the Library had been intentionally set on a wooden windowsill at the back of a secluded exterior area on the west side of the library.   The window had double panes, and the exterior window appeared to have been intentionally broken, leaving a small hole about 2 inches wide.   The interior window also had broken, but to a much greater degree, and the pane had fallen to the interior of the library on the floor.   The open hole in the double-pane window would have allowed for smoke and fire to travel to the interior of the library more easily and would have accelerated the spread of the fire.

22.   Det. Sgt. Ambroz located no competent ignition sources on the windowsill at the specific point of origin for the fire.   During his scene examination, he collected a few pieces of windowpane glass that appeared to have a type of clear gel on them, like petroleum jelly (Vaseline).   Petroleum jelly, although not an accelerant, can be used as a fuel to assist other combustible items to burn.   Det. Sgt. Ambroz also collected a black charred material which appeared to have properties like a sponge.   The charred material appeared to have been knocked to the ground when Captain Walker sprayed the fire with an extinguisher from inside the library. Based on the scene examination, Det. Sgt. Ambroz determined that origin of the fire was at the wooden windowsill on the exterior of the library on the C-side (rear).   He attributed the cause of the fire, due to lack of any other competent ignition sources in the area, to direct human involvement and concluded it was most likely intentionally set with a hand held removable device such as a lighter or matches on a material or device placed on the windowsill.

23.   Stowe Elementary School is located immediately to the southeast of the Stowe Library with an adjoining parking lot.  A security camera was mounted on the front of the Stowe Elementary School, facing northwest toward the area behind the Library where the fire had been set.  Investigators recovered video footage of an unidentified person, believed to be a male, walking away from the Stowe Library at approximately 10:42 PM—thirty-two minutes prior to the fire alarm activating at the Library on March 30, 2019, at 11:14 PM.  The lighting and distance from the camera make further details difficult to discern.  However, the person was walking away from the library, west on Park Street toward Depot Street, which itself leads to where the second fire occurred on the same night.

24.   As noted above, a second fire was called into Lamoille County Dispatch Center at approximately 11:22 PM on March 30, 2019.  Stowe fire fighters initially encountered the fire at the back of the building at 638 South Main Street, which is approximately 2/3 of a mile from the Stowe Library by the most direct roadways, including Depot Street.  The fire was burning near the main gas line which led into six propane gas regulators in a small enclave at the back of the structure.  It was burning upwards and outwards and had begun to burn into the interior of the building and into the roofline.  Numerous fire departments were toned out to respond to the fire due to the speed with which it was spreading.  Well over 350,000 gallons of water were used in the efforts of at least six fire departments in an attempt to extinguish the fire.

25.   The fire at 638 South Main Street directly affected five businesses and caused them to lose an as-yet underdetermined amount of money in lost sales and paid services.  The building, which was known as Stoweware Commons, was demolished due to the fire and water damage, which compromised the structural integrity of the building.  The five businesses included a flower shop and a dry cleaner, both of which relied on materials shipped in interstate or foreign

commerce.  Based on my experience with and knowledge of the Stowe area, the businesses in

Stowe rely heavily upon interstate tourism and sales of products or product components received

in interstate commerce.

26.   Once the fire at 638 South Main Street was under control and the last fire department

left the scene, it was approximately 5:30 AM on March 31, 2019.  Det. Sgt. Ambroz contacted

Assistant State Fire Marshal (ASFM) Chris Boyd from the DPS Fire & Explosion Investigation

Unit to help him with an origin and cause investigation.  Det. Sgt. Ambroz and ASFM Boyd

conducted their scene examination at 638 South Main Street by visually examining the building

all around its exterior.  Once the exterior of the building was completed, they looked for the least

amount of damage and worked their way to the most damaged part of the building.  Based on

their examination and the observations of the first fire fighters on scene, the area of origin was

determined to be at the back of the building (the C-side) on a wooden deck near where the main

propane gas line joined gas distribution regulators for all of the businesses in this building.  The

origin of the fire appeared to be at or near an aluminum gas regulator on the top far right of a

wood-sided wall where an aluminum step ladder appeared to have been placed against the

regulator.  The closest competent ignition sources, which were several feet away, were ruled out

as having been the cause of the fire.  The top right propane gas regulator, which had the

aluminum step ladder leaning against it, had been almost completely consumed.  Det. Sgt.

Ambroz and ASFM Boyd concluded the fire was intentionally set by direct human involvement,

most likely with a handheld removable device such as a lighter or matches.  The first fuel

ignited, which set in motion the destructive chain of events that followed, was consumed in the

blaze and could not be identified.

27.   In my training and experience, I know that propane gas regulators do not contain any item which produces heat or a competent source of ignition. Accordingly, finding a propane gas regulator at the area of origin's center can best be explained by an individual placing fire in the area for the purpose of causing damage and destruction.

**Fire 10 – April 18, 2019 – 14 Pond Street**

28.   On April 18, 2019, at 4:20 AM, a Stowe Volunteer Fire Fighter, Chris Walker, was on his way to work in South Burlington when he drove by the area near Pond and School Streets and noticed a haze over the road.  When he began to smell smoke, he drove on Pond Street, where he discovered smoke coming from the eaves of a chiropractor's office at 14 Pond Street. The office was unoccupied at the time.  Det. Sgt. Ambroz responded to the scene to conduct a fire scene examination.  He determined that the fire started on the back side of the building, on the exterior, again at a very low level by someone using a handheld removable ignition source such as a lighter or matches.  Finding another area of the sill plate where the wood siding had been freshly burned and charred, but from which fire had not spread, he determined that the most likely source was a lighter.  Although there were gas cans present, there was no evidence that gasoline had been used to ignite or accelerate the fire, and the building occupants later indicated that the gas can were already present.  Det. Sgt. Ambroz located no competent ignition sources in the area of the fire's origin.  He concluded the fire had been lit at the bottom of the siding and then had burned to the interior of the wall before spreading to the roofline and pushing smoke out of the eaves in the direction of Pond Street.

**Fire 11 – June 1, 2020 – Dumpster and Garage**

29.   On June 1, 2020, a fire in a dumpster at River Court—a residential complex located at 120 South Main Street (Route 100) in Stowe—caused a structure to burn to the ground.  The

dumpsters for trash and recycling were in a shed that was attached to a three-car garage with overhead storage in the center of surrounding residences. The building was a complete loss from the fire started in one of the dumpsters, and approximately a dozen nearby vehicles sustained substantial damage from the immense heat.

      30.  The cause of the fire at the residential complex was not determined at the time, but it was suspicious in nature due to the amount of previous fires in nearby unoccupied buildings.

**Fires 12 and 13 – August 2020 – Commercial Building and Dumpster**

      31.  In August 2020, Det. Sgt. Ambroz was notified of exterior fire damage to a commercial building located at 571 South Main Street in Stowe, which is located at the northeast corner of the intersection at South Main Street (Route 100) and Thomas Lane. The date of the fire was undetermined, but it appeared not to have been reported until at least one week after it was initially noticed. The fire extinguished itself before there was substantial damage to the building, which houses various businesses. The building's aluminum siding did not provide the fire sufficient combustible material to propagate. Based on the area where the fire was located, however, investigators determined it had been intentionally set.

      32.  On August 29, 2020, at approximately 10:17 PM, a dumpster filled with recyclable paper products along River Road in Stowe was set on fire. River Road generally runs roughly parallel with and just west of South Main Street (Route 100), but it begins at an intersection of South Main Street immediately north of the intersection of South Main Street and Thomas Lane. The dumpster was in a paved parking area south of the start of River Road, to the east of the river. The dumpster's location was within yards of the fire at the Stoweware Commons building at 638 South Main Street on that occurred on March 30, 2019. Det. Sgt. Ambroz did not respond

to the scene of the dumpster fire on August 29, 2020 because the fire appeared to be self-contained and did not damage any surrounding buildings.

**Fire 14 – August 30, 2020 – Stowe Cable Systems**

33. On August 30, 2020, an exterior fire occurred on the backside of a building occupied by Stowe Cable Systems (also known as Stowe Cablevision) located at 172 Thomas Lane in Stowe. The business provides cable television, telephone, and internet services to residents of Stowe and Jeffersonville, so it conducts business in a field that affects interstate commerce. The fire caused an alarm to activate at the business at approximately 1:17 AM. The fire was extinguished by authorities, but only after substantial damage had resulted to the building. Investigators determined that the fire had been started on a windowsill on the back side of the building, where a line of trees separates the building from Thomas Lane. It appeared to have been started with material similar to that found at the Stowe Library fire—a combination of sawdust and paraffin wax that is commonly sold commercially as a fire starter.

**Fire 15 – January 7, 2021 – Stowe Cable Systems**

34. On January 7, 2021, another exterior fire was discovered and extinguished early in the morning on the same building occupied by Stowe Cable Systems at 172 Thomas Lane. The area of origin was in the same vicinity on the backside of the building as the August 30, 2020 fire. First responders were dispatched to the scene at approximately 8:20 am, and Det. Sgt. Whitcomb observed that the fire appeared to have been set in the same manner as the previous fire at that building. The fire had burned through the outer exterior wood at the base of the sill plate, so Stowe Cable Systems employees had contacted the fire department out of fear that the fire may still be in the building's walls.

35.   Following the August 2020 fire, employees at Stowe Cable Systems had installed additional security cameras on their property to monitor the buildings at 172 Thomas Lane. Investigators obtained and reviewed footage from those security cameras for the early morning of January 7, 2021.  The footage showed an individual walking up to the building where the fire occurred, moving in a manner consistent with lighting a fire on the exterior backside of the building using a handheld lighter (such as a long-reach butane lighter), placing items into the small fire, and walking away from the scene.  The footage showed a time of approximately 5:56 AM when the fire was lit.  The depicted individual appeared to be a white male wearing a dark hooded jacket, a reflective watch on his left wrist, blue jeans, and a distinctive set of shoes.  The shoes had left a recognizable set of shoe prints in snow around the edge of the building where the fire was started.  Investigators prepared a press release using still-frame images from the security footage, and they solicited community input regarding the identification of the individual in the images that day.

**Investigation of Jeffrey M. Nolan**

36.   Based on multiple tips received regarding the individual in the footage, Det. Sgt. Whitcomb and Det. Sgt. Ambroz went to the home of Jeffrey M. Nolan on January 8, 2021 to interview him about the recent fire.  According to Det. Sgt. Whitcomb, SPD officers are familiar with Nolan through multiple prior calls for service.  Nolan lives in an apartment near the intersection of Cliff Street and South Main Street (Route 100) in Stowe, Vermont, within short walking distance of the fires described above.  Nolan met with the detectives at his home and agreed to be interviewed.  The detectives observed Nolan wearing a type of blue jeans and a reflective watch on his left wrist that were consistent with those on the subject in the security footage; they also observed a black hooded jacket behind Nolan that appeared to be consistent

15

with the jacket depicted in the footage.  Det. Sgt. Ambroz asked Nolan if he had seen anything

regarding the January 7 fire, and he told Nolan that there was a surveillance video and evidence

left at the scene.  Det. Sgt. Ambroz then observed Nolan to show signs of tension—his pulse

became rapid and visible in his neck, he appeared to have difficulty speaking, and his hands

began to visibly shake.  Det. Sgt. Ambroz used his phone to show Nolan still-frame images from

the security cameras; Nolan responded that you couldn't identify who it was because the photos

were not very clear.  Det. Sgt. Ambroz asked Nolan to contact him if Nolan heard of any

information about the fires.

    37.   Approximately ten minutes after the detectives left Nolan's residence, Det. Sgt.

Ambroz received an email from dispatch indicating that Nolan had called in to the Vermont

Arson Tip Line and alleged that the January 7 fire had been started by another individual.  Based

on the investigators' collective training and experience, we suspected that Nolan had made the

call to deflect blame from himself.

    38.   On January 12, 2021, Det. Sgt. Whitcomb applied for and obtained a state search

warrant for Nolan's residence, authorizing investigators to search for and seize a dark hooded

sweatshirt or jacket, a pair of blue jeans, a set of shoes with a specific tread pattern, and a long

reach butane lighter.  He and other investigators executed the warrant the same day, locating and

seizing—among other items—three long-reach butane lighters and two boxes of fire starters.

Based on their search of the property, Nolan's residence did not contain a fireplace or a fire pit

with which those devices would be readily associated.

    39.   In conjunction with the search, Det. Sgt. Ambroz and Det. Sgt. Whitcomb engaged

in a lengthy consensual interview with Nolan.  The interview was recorded, but I have not

personally reviewed the recording at this time.  Det. Sgt. Ambroz and Det. Sgt. Whitcomb have

discussed the interview with me, and they provided the following information:

    a.   Nolan admitted to having started certain fires that were part of this

investigation.  He provided information about where and how the fires were started,

which Det. Sgt. Ambroz believed included information only the person who set the fires

would know.  Based on the detectives' descriptions of his statements, Nolan admitted to

and provided details about eight fires (Fires 8-15, as described in this affidavit).

    i.   Regarding the fire at the Stowe Library on March 30, 2019, Nolan

stated that he had placed a fire starter on the windowsill on the side of the

building.  He said he thought he had started the Library fire first that night.

    ii.   Regarding the fire at 638 South Main Street on March 30, 2019, Nolan

stated that he had started the fire with a fire starter on the stairs in the back of the

building, that he did not know the whole building was going to burn, and that he

was sorry that he did it.

    iii.   Regarding the fire at the chiropractor's office at 14 Pond Street April

18, 2019, Nolan stated that he started the fire in the back using a lighter on the

exterior of the building.

    iv.   Regarding the fire at the residential garage at 120 South Main Street

on June 6, 2020, Nolan stated he had lit a dumpster on fire with a lighter but that

he did not mean to start the building on fire.  He later viewed the damage from

Mac's Market, which is just northeast of the destroyed building on a shared drive.

    v.   Regarding the fire at the multi-business building at 571 South Main

Street in August 2020, Nolan stated that he lit the fire using just a lighter on the

outside of the building on the back side.  He described the exact origin of the fire and stated he was only present for a short time.

      vi.     Regarding the dumpster fire along River Road on August 29, 2020, Nolan stated that he started the dumpster on fire using the same kind of fire lighter he used each time and that the dumpster had been filled with trash.

      vii.     Regarding the first fire at Stowe Cable on August 30, 2020, Nolan stated that he started that fire in the same way the first time and that the building had been damaged both times.

      viii.     Regarding the second fire at Stowe Cable Systems on January 7, 2021, Nolan stated he lit the wood on the building on fire with a fire starter and a butane lighter.

    b.   Nolan denied having any memory of the Water Department shed fire along Thomas Lane (Fire 7 above), though the shed fell along a trail through the woods between Nolan's residence and Stowe Cable Systems.

    c.   Nolan stated that he set some of the fires with just a handheld butane lighter, while he set other fires using a campfire-style fire starter (consistent with the kind made of sawdust and paraffin wax).  Nolan denied knowing why he started the fires, but stated he did not want to hurt anyone and tried to set fires to buildings that no one was living in.

    d.   Nolan told the detectives that he had a severe drinking problem and was often very drunk when he started the fires.  He also told them that he had a traumatic brain injury from an incident in 1996 and that he has issues with his memory.

    e.   Nolan told the detectives that—after their visit on January 8, 2021—he thought they might suspect his involvement in the fires, so he took the hooded jacket and

shoes he wore when he set the Stowe Cablevision building fire on January 7, 2021, and

threw them in a trash can at a house located near the police department that evening.

**Summary of Events**

40.   The eight fires to which Nolan admitted (as Fires 8-15) occurred between March 30,

2019 and January 7, 2021; were all set during the hours of darkness; were set against structures

that appeared likely to be vacant or unoccupied at the time, and were set at a low level, at or

below windowsills.  As shown in the following map showing the locations of Fires 7-15, each of

the fires was set within an easy walking distance of Nolan's residence, with the furthest

approximately half a mile away.



41.   The other fires described above (Fires 1-6) also occurred within walking distance of Nolan's residence and shared similar characteristics.  While some of Fires 8-15 showed evidence of small fuel sources, such as the Stowe Library and Stowe Cable Systems fires, none of the fires in this investigation that occurred prior to March 30, 2019 (i.e., Fires 1-7) clearly involved a fire starter or other fuel.   There was a significant break in time between Fire 5 and Fire 6 (August 2016 to August 2018), which could imply that different individuals were involved in the subsets.  Nolan denied having memories of any fire prior to Fire 8 (March 30, 2019), but he did not outright deny his involvement in Fires 6 and 7.

42.   Many of the buildings, structures, and implements the defendant admitted to damaging with fire were involved or used in activities affecting interstate and foreign commerce.  Stowe Cable Systems (Stowe Cablevision), for example, provides internet access, long-distance telephone access, and cable television services to customers in Stowe, Vermont.  The signals carried by Stowe Cable Systems frequently originate outside of Vermont, and the purposes of the business include providing those signals to customers in Vermont and providing the customers access to the world wide web.  Further, at least two of the businesses contained within the Stoweware Commons building—Uncle George's Flower Shop and Denoia's Drycleaners—relied on materials and supplies that had been shipped or transported in interstate or foreign commerce.

## Conclusion and Request

43.   Based on the foregoing, I submit there is probable cause to believe that, on or about

January 7, 2021, Jeffrey M. Nolan maliciously damaged, by means of fire, the Stowe Cable

Systems building located at 172 Thomas Lane in Stowe, Vermont, which building was used in an

activity affecting interstate and foreign commerce, in violation of 18 U.S.C. § 844(i).  I

respectfully request the Court issue a criminal complaint charging him accordingly and a warrant

for his arrest.

Dated at Burlington, in the District of Vermont, on January **21** , 2021.

Respectfully submitted,

_____
Tam Vieth, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


Subscribed and sworn to before me in Burlington, Vermont on January 21, 2021

_____
Hon. John M. Conroy, Magistrate Judge
United States District Court
District of Vermont

21